(Decided 3rd February, 1886.)

---

J. DONALD CAMERON *vs.* JACOB TOME, Trustee, and others.

*Mortgage bondholders—Coupons—Priority of Lien.*

As against bondholders who presented their coupons at the office of the company for payment and not for sale, and who had the right to assume that they were paid and extinguished, a person who advances the money to take them up, under an undisclosed agreement with the company that the coupons should be delivered to him uncancelled as security for his advances, is not entitled to an equal priority in the lien, or the proceeds of the mortgage by which the coupons are secured.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*Frank Gosnell*, and *A. Stirling, Jr.*, for the appellant.

*Thomas W. Hall,* and *Charles Marshall,* for the appellees.

ROBINSON, J., delivered the opinion of the Court.

The franchises and property of the People's Passenger Railway Company were sold under foreclosure proceedings instituted by the second mortgage bondholders. The sale was made subject to a first mortgage by the company to Jacob Tome, trustee, to secure the payment of the principal and interest of $100,000 coupon bonds, and John W. Hall became the purchaser. Hall subsequently conveyed the property to the *People's Railway Company,* a new and distinct corporation.

The appellant is the holder of certain *interest coupons of the first mortgage bonds,* of the face value of $2745, and these coupons he claims are entitled to the lien of the first mortgage upon the property of the *People's Passenger Railway Company.* The auditor and master to whom the papers were referred to state an account, was, upon the proof submitted to him, of the opinion, that the coupons held by the appellant *were not entitled to the lien of the first mortgage,* and that they were acquired by the appellant under such circumstances, as to entitle him only to *a claim against the company for money loaned.*

This appeal is taken from a *pro forma* decree ratifying the report of the auditor and master.

In support of the lien now claimed by him, the appellant contends that the coupons were purchased by him from the first mortgage bondholders, and constitute therefore a part of the mortgage debt. The appellees on the other hand contend that the coupons were presented by the holders thereof at the company's office for payment, in pursuance of a notice published by the company in the newspapers that they would upon such presentation be paid; that they were so paid by the proper officer of the

Cameron *vs.* Tome, *et al.*

company, and were accordingly delivered to him for retirement and cancellation, and not for assignment.

Is the appellant to be treated as a purchaser of the coupons in controversy? We think not. His own admissions, the admissions of the company, and the proof before the auditor and master, are all against any such contention. Tome, the trustee in the first mortgage, in the cross-bill filed by him, expressly charges, that the company being without means to pay the interest coupons falling due on the 1st of January, 1883, its president made an arrangement with the appellant whereby the latter was to advance the money to William H. Patterson, (the secretary of the company,) to take up said coupons, and which were to be delivered to the appellant to be held by him as his property, until the company should be able to raise the money to pay the same. He further charges that in pursuance of this arrangement an advertisement was published, signed by W. H. Patterson as secretary of the company, notifying the holders of the first mortgage bonds to present their coupons at the company's office for payment; and that certain bondholders in ignorance of the arrangement made with the appellant presented and delivered the coupons to Patterson, the secretary, as they supposed for retirement and cancellation, receiving from him the money therefor. The bill then charged that the whole arrangement was but a cloak to conceal the fact of a default having been made, and to avoid the consequences thereof, and that it was in fraud of the rights of the first mortgage bondholders.

The answer of the company to the cross-bill of Tome admits the facts set forth in the bill, but denies that the arrangement was fraudulent. The answer of the appellant admits also the facts stated, except that it denies all fraud, combination or improper motive in respect to the coupons, and alleges "that the money which was paid by the officers of the defendant company to the bondholders, who delivered to them coupons due 1st of January, 1883,

was the money of the said J. D. Cameron, advanced by him to the company, and the said coupons are now held by him under the arrangement stated in the bill."

In addition to these admissions on the part of the company and the appellant himself, the proof taken before the auditor and master shows beyond question, that the coupons were presented by the first mortgage bondholders at the company's office for *payment,* and that they were in fact paid by its secretary, and were delivered to him for retirement and cancellation. The Messrs Hambleton in presenting $660 of these coupons, notified the secretary of the company that they were presented for *payment and cancellation by the* company, and not for sale, and that unless so paid by the company they would not be surrendered. To this Patterson replied, "I am the secretary of the company, and advertised that I was paying the coupons, which I am doing."

There is not a particle of proof to show that the holders of these coupons ever sold or agreed to sell them to the appellant, or that they were delivered to him with their knowledge or assent. They were due and it was the duty of the company to pay them. They constituted so long as they remained unpaid, a part of the mortgage debt, and an accumulation of unpaid interest would necessarily affect the value of the security held by the first mortgage bondholders. They had therefore a direct interest in having them paid and extinguished. The appellant advanced, it is true, the money to pay them, but he was a large holder of the second mortgage bonds, and was anxious to avoid a default on the part of the company, which might lead to a foreclosure and sale of the property of the company by the first mortgage bondholders. Besides, the agreement was one made between him and the company, and was unknown to the holders of the coupons, when they presented them for payment. This being so, we take the law to be well settled, that as against bond-

holders who presented their coupons for payment and not for sale, and who had the right to assume that they were paid and extinguished, a person who advances the money to take them up under an undisclosed agreement with the company, that the coupons should be delivered to him uncancelled as security for his advances, is not entitled to an equal priority in the lien, or the proceeds of the mortgage by which the coupons are secured. *Union Trust Company vs. Monticello and Port Jervis R. R. Co.,* 63 *N. Y.,* 313 ; *Haven vs. Grand Junction Railroad Depot Co.,* 109 *Mass.,* 96; *Ketchum vs. Duncan,* 96 *U. S.,* 662.

But admitting this to be so, it is further contended, that the proceedings in this case show that the first mortgage bondholders, whose coupons were taken up by the company and the money advanced by the appellant, have for a good and sufficient consideration, ratified the transaction as a purchase, and have agreed that he should hold them as unpaid coupons, with the same priority as all other coupons under the first mortgage. This contention is we think equally unfounded. From the filing of the bill for foreclosure and sale by the second mortgage bondholders, to the sale made by the trustees under the final decree of the Court, at each and every step of this protracted litigation, the lien now claimed by the appellant has been resisted and denied by the first mortgage bondholders. Prior to the passing of the final decree, the papers were referred to Daniel M. Thomas, Esq., auditor and master, to state an account of all the liens and encumbrances resting upon the property. In stating this account the auditor and master says, "the coupons for $2745 falling due January 1st, 1883, and held by J. D. Cameron have not been treated as entitled to the lien of the first mortgage of the company, because the evidence shows they were paid and held by the said Cameron under circumstances which only entitle him to a claim against the company for money loaned."

This report was ratified by the Court, except that portion of it relating to the lien of the coupons held by the appellant, which question was reserved for further consideration, and the trustees were then directed to sell the franchises and property of the company, subject to the first mortgage made to Tome, trustee, to secure the payment of the principal and interest of the $100,000 coupon bonds. And when the property was offered for sale under this decree, the trustees stated that in accordance with the terms of the decree, reserving the question of Cameron's coupons for further determination, the purchaser would have the right to contest the lien of said coupons. There is nothing certainly to be found in these proceedings from which it can be inferred that the bondholders acknowledged these coupons to be a lien on the property. Nor is there anything to be found in the agreement between the appellant and the trustees under the first and second mortgage. It is merely an agreement between all parties, that the lien claimed by Cameron shall be considered and determined by the Court, unaffected in any manner by the charge of combination and fraud alleged in the cross-bill filed by Tome. In other words, it was a withdrawal of the charge of fraud thus made. The deed from the trustees to Hall, the purchaser, conveys the property and franchises of the company subject to the first mortgage to Tome "to the amount of one hundred thousand dollars for the principal of said mortgage, and of three thousand dollars of interest thereon due on the first day of January, 1883, and of a like amount of interest due on the first day of July, 1883." And so does the deed from Hall to the People's Railway Company. But these deeds convey in precise terms, the property as decreed by the Court, *totidem verbis,* and by the decree the question as to the appellant's lien was expressly reserved for the further consideration of the Court. So taking the deeds and decree together there is nothing to justify the inference that the parties thereto

admitted the $2,745 interest coupons of the 1st of January, 1883, now held by the appellant, were entitled to the lien of the first mortgage. In any aspect in which the case may be considered, we are of opinion that these coupons are not a lien protected by the first mortgage.

*Decree affirmed.*

(Decided 5th February, 1886.)