## Case No. 3,999.

### DOOLEY v. VIRGINIA FIRE & MARINE INS. CO.

[3 Hughes, 221.] [1]

District Court, E. D. Virginia. 1880.

NEGOTIABLE NOTES — PAYMENT — SUBSEQUENT TRANSFER BY MAKER—LIEN.

Negotiable promissory notes, ranking as a first lien upon real estate, were deposited in bank by the payees for collection on their account. As they fell due they were paid by the maker (now the bankrupt), who used funds of a loan and insurance company for the purpose, and who afterwards gave the notes to the company, accompanied by writings, stipulating to pay two per cent. more than the legal rate of interest which the notes had borne, and also stipulating that the company should hold the notes as a first lien upon the property on which they had been secured, in the same manner as the payees of the notes had held them; all of which was without the knowledge or privity of the payees, who had collected the amount of the notes. *Held*, that the notes were extinguished, as such, when paid; that the obligation of the maker of them to the company was represented by the stipulations in writing which he had given it; and that these stipulations were new contracts of different tenor, form, and terms from the notes which had been paid, and were not first liens upon the property on which the notes had been secured, in the same manner in which the notes had been.

[This is a bill in equity by James H. Dooley, trustee in bankruptcy, against the Virginia Fire & Marine Insurance Company.] The property on which the liens mentioned in the proceedings rest consists of a lot of ground in the city of Richmond, on which are a large brick foundry and other buildings. This real estate was purchased on the 3d of December, 1872, by Asa Snyder, individually, from the firm of Dunlop, Moncure & Co., and was conveyed to him on that date. The sum of $10,000 was paid in cash, and for the balance of the purchase money Snyder executed his five negotiable notes, all dated December 3d, 1872, payable as follows, for the respective amounts named, viz.: 1st. Payable one year after date, for $2,230.15. 2d. Payable two years after date, for $2,127.22. 3d. Payable three years after date, for $2,024.29. 4th. Payable four years after date, for $1,921.36. 5th. Payable five years after date, for $1,818.43. The notes were all calculated at the legal rate of six per cent. interest, fixed by the laws of Virginia.

These notes were secured by deed of trust upon the property which has been mentioned, bearing even date with the notes. This deed was duly recorded, and constitutes the first lien upon the property in the proceedings mentioned. The controversy is confined to the first, second, and third notes, which are now in the possession of the Virginia Fire & Marine Insurance Company, the fourth note having been taken up by that company, and the fifth note still held by Dunlop, Moncure & Co., being admitted to be valid liens upon the property.

The facts in regard to the first three notes are as follows: The first note having been placed in bank for collection by Dunlop, Moncure & Co., and Snyder, the maker, being unable to pay it when it fell due. he obtained from the Virginia Fire & Marine Insurance Company their check for the amount of the note; giving his own note for ninety days, to bear 8 per cent. interest, upon the understanding that the Virginia Fire & Marine Insurance Company were to hold the original note against the real estate in the same relation that Dunlop, Moncure & Co., the original holders of the note, sustained in the trust deed. This understanding, however, was only known to Snyder and the company. This check of the Virginia Fire & Marine Insurance Company, dated December 6th, 1873, was deposited in bank by Snyder to his own credit, and checked upon by him December 6th, 1873, for the amount of the note; which was thus taken out of the bank by Snyder, and then delivered to the Virginia Fire & Marine Insurance Company, in compliance with the understanding, Dunlop, Moncure & Co., having nothing to do with the transaction. Ninety days afterwards Snyder executed the paper dated December 6th, 1873, filed with the depositions and marked "A," in which he recited the circumstances, and agreed that the note should be secured by the deed of trust, and should bear eight per cent. interest per annum. The facts in relation to the second and third notes are substantially the same. The second note was allowed by Dunlop, Moncure & Co., to be renewed for thirty days, at the end of which period it was taken out of bank and turned over to the Virginia Fire & Marine Insurance Company, in the same manner and upon the same understanding and agreement as the first note, except that the agreement marked "B" was executed on the day of the maturity of the note, and the money was advanced for no particular time. The third note also was transferred to the custody of the Virginia Fire & Marine Insurance Company in like manner essentially with the second note, the only difference being that this note was not renewed, and that the check of the Virginia Fire & Marine Insurance Company was passed and charged to the firm of Asa Snyder & Co., and it does not appear how its proceeds ever went into the possession of Asa Snyder

[1] [Reported by Hon. Robert Hughes, District Judge, and here reprinted by permission.]

individually. There was a similar agreement made in regard to it, marked "C."

The register, in his report of liens and their priorities, says: "Upon this view of the facts I am inclined to believe that the Virginia Fire & Marine Insurance Company are entitled to a lien upon the property in the proceedings mentioned, for the amount of the notes aforesaid, by reason of the deed of trust made to secure the holders thereof, and I do therefore report that the five notes, secured by the deed of trust aforesaid, constitute the first lien upon the property of said bankrupt, Asa Snyder. The interest on the second and third notes being usurious, nothing can be allowed."

The following is a copy of the agreement A referred to above, to which agreements B and C were similar in terms: "This certifies that the Virginia Fire & Marine Insurance Company have advanced to me the sum of twenty-two hundred and thirty 15-100 dollars, with which my negotiable note due this day has been paid to the holders thereof, and the said note has been delivered to the said Virginia Fire & Marine Insurance Company as my obligation for the said sum of $2,230.-15, on which I hereby obligate myself to pay from the date hereof, at the option of the said company, interest at the rate of eight per centum per annum so long as the said company shall forbear to collect the said principal sum. The said note is described in and secured by deed of trust executed by me, dated December, 1872, recorded in Richmond chancery court clerk's office, and given as part of the purchase price for real estate on Cary street in this city, conveyed to me by ——. Given under my hand at Richmond, this 6th day of December, 1873. (It was in fact executed on the 6th March, 1784.) Asa Snyder."

The following were the exceptions taken by the complainant to the report of the register in regard to the three notes: 1st. Because the commissioner reports that the three notes, dated December 3d, 1872, and payable respectively at one, two, and three years after date, for the sums of $2,230.15, $2,127.22, and $2,024.29, are liens under the deed of trust executed by Asa Snyder. The evidence establishes that these notes were all paid at maturity, and the lien for their payment was then extinguished. 2d. Because (even if the first note of $2,230.15 is a lien) no interest can be allowed thereon. It is shown that the note bore only 6 per centum interest. If paper (A) establishes that Snyder after its maturity and payment agreed to pay 8 per centum, surely the excess of 2 per centum interest would not be secured by the deed, and except on the ground that said excess over 6 per centum is reported as a part of the trust debt. But the law existing at the time (March, 1873) allowed only an excess over 6 per centum interest which may be agreed upon by the original parties to the contract, and be specified on the bond, note, or other writing, evidencing the debt. Acts 1872–73, p. 329, § 4. Section 5 provides for forfeiture of all interest if more than legal interest is contracted for. This defendant in one breath claims that this original obligation is unpaid. If so, it bore only 6 per centum interest, because no greater rate is specified in the note. In the next breath it claims that paper (A) shows a contract to pay 8 per centum interest on the amount of this note, which is recited to have been paid to the holders thereof.

If the first pretension is true, the debt is due on the note and bears 6 per centum interest. A greater rate is stipulated for, but not on the face of the note, and therefore no interest can be collected. If the last pretension is true, viz., that the obligation to pay arises from paper (A), the debt is not secured by the deed.

Ould & Carrington, for complainant.

Sands & Carter, for defendant.

HUGHES, District Judge. These exceptions raise a question between different lien creditors of the bankrupt, and not between the Virginia Fire & Marine Insurance Company and the bankrupt. I can treat it only as between different lien creditors. The three negotiable notes which are the subject-matter of this controversy were due from Snyder to Dunlop, Moncure & Co. They were never indorsed to a third person by the payees. They remained to the date of their maturity evidences of indebtedness from Snyder to Dunlop, Moncure & Co., the payees named in them. They could become evidences of indebtedness from Snyder to a third person only by the payees' indorsement of them before maturity, or their assignment of them after maturity. They were not indorsed over by Dunlop, Moncure & Co. They were placed in bank by them for collection on their own account. They were so collected by the bank on account of Dunlop, Moncure & Co. As to Dunlop, Moncure & Co. they were paid. As to the payees holding the notes at maturity they were paid. The checks which were used for paying them were presented by Snyder; and the notes were delivered to Snyder on payment. As to the only persons having the property in the notes at the time of their maturity, the notes were paid. If they, as notes, were paid to the only persons having a right to demand payment when they became payable, they were paid as to all the world. When received from the bank by Snyder they ceased to be notes due according to their tenor. They ceased to be obligations to any one according to their tenor. They ceased to be the property of the only persons who could own them, as obligations of Snyder according to their tenor; and they became the property of Snyder, not as his notes due according to their tenor and purport, but only as vouchers or evidence of a past transaction and an extinguished debt. As to effect of payment,

see Daniel, Neg. Inst. 250–253; Byles, Bills, 262; Story, Prom. Notes, § 453; Clevinger v. Miller, 27 Gratt. 740; Bank v. Winston [Case No. 944].

If they had not been paid at maturity, they would have remained the property of Dunlop, Moncure & Co.; and then Dunlop, Moncure & Co. might have assigned them to a third person. But they had been paid, and on their payment it had ceased to be competent for Dunlop, Moncure & Co. to assign them to a third person. The payment of them destroyed Dunlop, Moncure & Co.'s privity and property in them. They were never assigned by Dunlop, Moncure & Co., who were the only persons competent to assign them, and as evidences of debt according to their tenor, from Snyder to Dunlop, Moncure & Co., they were extinguished on the dates of their maturity. The present obligation of Snyder to the Virginia Fire & Marine Insurance Company arises upon the papers, of which Exhibits A, B, and C are copies. If Snyder's obligation to the Virginia Fire & Marine Insurance Company could have rested upon the three notes in question, then it would have been unnecessary to take these obligations, A, B, and C. The fact that it was necessary to take the stipulations, A, B, and C, shows that the notes themselves could not represent an indebtedness from Snyder to the company. The notes were attached to the papers really representing Snyder's obligation to the company only as a part of the res gestae of the new transaction, and as explaining the consideration of the new obligations. The checks of the company given to Snyder constitute the consideration of the new assumpsit; the paid notes do not.

The complainant's theory of a constructive assignment by Dunlop, Moncure & Co. of the three notes, being implied in their indorsement of them to the bank for collection, is not admissible. The holder of such paper has a right to indorse for collection without being held for the notes if paid or taken up by any one whomsoever acting without their knowledge or privity. An assignment in such a case must be express, so that the payee may assign with or without recourse, as he may choose.

For these and other reasons which might be stated, the exceptions of the trustee to the register's report in regard to the three notes are sustained and allowed.