## Richmond.

### CITIZENS BANK v. LAY.

#### APRIL 16TH, 1885.

1. NEGOTIABLE INSTRUMENTS—*Discharge.*—Payment of note at bank is either a sale or a discharge thereof. A sale, it cannot be without the bank's consent. And where the note is paid by a stranger bound for its payment at maturity, the note is thereby actually discharged, and cannot be re-issued by him so as to bind the parties thereto, or to keep alive a trust-deed executed to secure it, except with the knowledge and consent of those parties.

2. QUÆRE.—When may suit be brought on a dishonored note? As soon as it is dishonored, or after business hours on the day of its dishonor, or on the next day after its dishonor?

3. NEGOTIABLE INSTRUMENTS—*Discharge—Estoppel—Case at bar.*—C. purchased a lot and owed thereon $2440, evidenced by his note secured by trust-deed on the lot. P. bought the lot of C., and, as part of the price, agreed to pay the note when due. When due, P. paid the note and took it up. It was not marked "paid," as P. told the note clerk he wanted to deposit it elsewhere as collateral. He did so deposit it with the Citizens Bank. Afterwards P. sold and conveyed the lot to L. The trust-deed had not been released, but P. told L. the note had been paid. Later, the bank had the lot advertised for sale to pay the note, and L. obtained an injunction.

HELD:
1. The transaction between P. and the bank at which the note was payable, discharged the note of C.

2. L. was entitled to rely on the statement of P. that the note had been paid, and was not estopped from denying its existence as a valid security, though P. might have been so estopped.

3. L. was a purchaser for value without notice, and it was proper to perpetuate the injunction in his favor.

Appeal from two decrees of the chancery court of the city of Richmond, entered respectively, 18th January, 1883, and 28th June, 1883, in a suit wherein John F. Lay was plaintiff, and the Citizens Bank of Richmond and others were defendants.

Z. D. Pickrell, January 1st, 1876, purchased of R. B. Chaffin a lot in Richmond. Chaffin owed on the lot $2440, evidenced by his note, which was secured by a trust-deed on the lot. Pickrell covenanted with Chaffin to pay this note as part of the price he was to pay for the lot. The note fell due July 19–21, 1877, and on the latter day, Pickrell, unable to meet it, borrowed $2000 from the Merchants National Bank of Richmond, upon a promise to deposit the note as collateral security for the loan. With this sum and $440 of his own money, he took Chaffin's note up out of the First National Bank of Richmond, where it had been deposited by the holder, Gilmour, and deposited it with the Merchants National Bank as collateral security for the $2000. This was before three o'clock on the last day of grace. The note was not marked "paid," Pickrell telling the note clerk that he wanted to deposit it elsewhere as collateral. The Merchants National Bank held the note until August, 1877, when Pickrell, under an identical arrangement with the Citizens Bank of Richmond, borrowed $2000 from the latter, took up the note from the Merchants National Bank and deposited it as collateral security. Pickrell, by payments, reduced the amount due thereon to $969.82, at the time this suit was instituted.

In August, 1878, as the result of certain dealings between Pickrell and the appellee, John F. Lay, he executed to Lay a deed conveying the lot to the latter, who subsequently conveyed it to secure a debt to the Petersburg Saving and Insurance Company, also an appellee here. At this time the original deed of trust, securing the note of Chaffin on the lot, had not been released, but it was contended by Lay that Pickrell had informed him that the note had been paid, which contention

was denied by Pickrell. In November, 1881, the Citizens Bank directed the trustee to sell the lot to pay the balance due upon the note. Upon advertisement, Lay brought his bill and obtained an injunction, upon the grounds that the transaction between Pickrell and the First National Bank operated as a payment of the note; that the lien on the lot was thereby discharged, and that he was a purchaser for value without notice. A final decree was entered in favor of Lay, and the injunction was perpetuated. From this decree the Citizens Bank appealed.

*Sands, Leake & Carter*, for appellant.

*Pegram & Stringfellow* and *A. R. Courtney*, for appellee.

Lewis, P., delivered the opinion of the court.

We are of opinion that the decree is right, and must be affirmed. The transaction between Pickrell and the First National Bank, necessarily operated either as a sale or payment of the note in question. It was not the former, and must therefore have been the latter. It is essential to a sale that there be a seller on the one hand and a buyer on the other. Here there was neither. The note was deposited in bank by Gilmour, the owner, for collection only. He himself testifies that he "gave no authority to the bank, or to any of its officers, or to anyone else, to sell or transfer the note to anyone." It is equally certain that the bank did not undertake to sell or transfer it to Pickrell, whatever may have been *his* object in taking it up. It makes no difference that he declared his intention to the officials of the bank to deposit it as collateral elsewhere, and that at his request it was delivered to him uncancelled. The duty of the bank was discharged when it received the money and surrendered the note, and this was all that it did or intended

to do.   The payment by Pickrell was therefore a payment of a debt which he had covenanted to pay, and the note was thereby extinguished.

In *Lancey* v. *Clark*, 64 N. Y. 209, the defendant made. his note for the accommodation of the firm of Lambert & Lincoln, for whom it was discounted.   Before the note matured Lincoln wrote to the plaintiff to take up the note, and to furnish money for that purpose.   The plaintiff sent the money to Lincoln, who placed it in bank to his individual credit, and on the day the note fell due took up the note with his individual check.   He did not assume to act for the plaintiff, or ask to have the note transferred to anyone.   He asked to have the note protested, so that he could hold the indorser and maker after protest.   After he had thus paid and taken it, he sent it to the plaintiff.   In an action on the note, it was held that the plaintiff did not take title from the bank, but from Lincoln, and subject to any defence against it in the hands of the latter; that the bank could not be made a seller without its knowledge or consent, and did not transfer the note, but only took payment, and that the plaintiff was not entitled to recover.   The court said: " The plaintiff did not take title from the bank.   It matters not that he furnished the money, and that Lincoln promised to use it in taking up the note for him.   It matters not that the note was protested, so that the indorser and maker could be held, or that the bank did not intend absolutely to discharge and cancel the note.   The question is, did the bank transfer or sell the note to the plaintiff?   *   *   *   All the bank did was to take payment of the note, and deliver it up to a party paying and liable to pay, after protesting it, so that he could make such use of it as the law and the facts would authorize.   It did not transfer or intend to transfer it.   The plaintiff, therefore, took no title to it from the bank, but he took it from Lincoln, and cannot therefore enforce it against the defendant."

The same principle was asserted in *Eastman* v. *Plumer*, 32 N.

H. 238. In that case the defendant executed the note upon which the suit was brought as surety. At its maturity it was taken up by the principal debtor with money furnished for the purpose by the plaintiff. Whereupon, the note was surrendered, but the plaintiff was not known in the transaction by the holder to whom the money was paid. It was held that the note was satisfied, and that the action was not maintainable. To the same effect is the opinion of Judge Hughes, of the United States district court, in *Dooley* v. *V. F. & M. Ins. Co.,* 3 Hughes, 221. See also, 2 Danl. on Nego. Insts. sec. 1222.

In the light of these principles, the note in question when delivered to Pickrell was paid and satisfied. For although the maker of a promissory note payable at a bank has until the close of business hours on the day of its maturity in which to pay, yet payment may be demanded, and hence may be made, at any time after the commencement of business hours on that day. 2 Danl. on Nego. Ists. secs. 1210, 1235. The authorities, as counsel have said, are not agreed upon the point as to the precise time when suit may be brought on a dishonored note payable at a bank; some holding that it cannot be brought until the day after its dishonor, others that it may be brought at any time after the expiration of business hours on the day it is payable, and others still, that it may be commenced as soon as payment is refused on that day. But we do not perceive the analogy between any of these cases and the question before us. For whatever may be the rights of the maker in respect to a suit against him, undoubtedly he may pay at any time after payment is demandable, and such payment will operate as an extinguishment of the note. So here, when payment was made by Pickrell, the note was discharged, and could not thereafter be negotiated by him. He was not a party to the note, and in taking it up was only fulfilling his contract with the maker. It is certain the latter was discharged by the payment to the bank, and the law is well settled that after payment at maturity,

a note cannot be re-issued, so as to charge any party thereto who otherwise would be discharged, unless with his knowledge or consent. Story on Bills, sec. 223; 2 Danl. on Nego. Ists. sec. 1233; *Burbridge* v. *Manners*, 3 Camp. 193; *Gardner* v. *Maynard*, 7 Allen, (Mass.) 456.

But if it were conceded that the note was transferred by the bank to Pickrell, and that having been deposited with the Merchants National Bank before 3 o'clock P. M. on the day of its maturity, the latter bank acquired a complete title thereto, the result would be the same. For, when afterwards surrendered to Pickrell, the note was long past due, and the Citizens Bank, the appellant here, acquired the note, not from the Merchants National Bank, but from Pickrell, and therefore took it with all its infirmities. Now, inasmuch as Pickrell, by his covenant with Chaffin had bound himself to pay the note when due, it is plain that in an action on the note there could have been no recovery by Pickrell against Chaffin; and if the note as to Chaffin was paid, the trust-deed executed by the latter to secure its payment was in effect discharged.

It is insisted, however, that Pickrell having delivered the note to the Citizens Bank as a valid, subsisting security, his alienee, Lay, is estopped from denying that it was. But we cannot concur in this view. The vitality of the note in Pickrell's hands was gone, and could not be restored without Chaffin's consent; and whatever may have been the effect of the former's representations upon *him*, it is clear that the alleged estoppel cannot operate as against Lay. The latter was a purchaser for valuable consideration of the lot upon which the trust-deed had been executed, and testifies that at the time of the purchase he was informed by Pickrell that the note had been paid. This Pickrell denies, but the circumstances of the case tend to sustain the statements of Lay. It is not shown that Lay had notice of any representations by Pickrell to the Citizens Bank, or of the fact that the note secured by the trust-

deed had been passed to the bank; and although the lien of that deed had not been formally released on the record, yet he had the right to rely on Pickrell's representations to him that the note had been paid. He was, therefore, a purchaser without notice of, and consequently is not bound by, any estoppel *in pais* resting on his vendor, Pickrell. See Bigelow on Estoppel (3d ed.), 378.

DECREE AFFIRMED.