IN THE

# SUPREME COURT OF APPEALS

OF

## VIRGINIA.

𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

CUSSEN v. BRANDT & DUNLOP, TRUSTEES, AND OTHERS.

MARCH 16, 1899.

Absent, Cardwell, J.

1. NEGOTIABLE PAPER—*What Constitutes Payment—What a Purchase.*—When one who is primarily bound for the payment of a note takes it up, it is a payment and extinguishment of the note regardless of his intention; but if the note be taken up by a stranger, who is neither a party to the paper, nor in any way bound for its payment, it becomes a question of fact, to be determined upon the evidence in the particular case, whether the transaction constitutes a payment or a purchase.

2. NEGOTIABLE PAPER—*Overdue—Sale by Agent to Collect.*—The purchaser of past-due negotiable paper, from an agent for collection, acquires only such right and title as the agent had.

3. NEGOTIABLE PAPER—*Endorsed "For Collection"—Erasure of Endorsement—Notice to Purchaser.*—The purchaser of negotiable paper endorsed "for collection" is charged with notice of the title of the holder, although the endorsement, which is still legible, be erased.

VOL. XCVII—1

4. NEGOTIABLE PAPER—*Sale of One of a Series of Secured Notes Endorsed "For Collection"—Postponement of Purchaser.*—The purchaser, from an agent to collect, of one of a series of negotiable notes secured by a deed of trust on real estate and payable in the order of their maturity, is postponed to the holder of the notes thereafter maturing, where the note sold bears the endorsement "for collection," which is still legible, though erased.

Appeal from a decree of the Chancery Court of the city of Richmond pronounced November 10, 1897, in a suit in chancery wherein the appellees, Brandt and Dunlop, trustees, were the complainants, and the appellant and others were the defendants.

*Affirmed.*

The opinion states the case.

*L. L. Lewis*, for the appellant.

*Jackson Guy, Coke & Pickrell, John Dunlop* and *B. B. Munford*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

On the 15th day of December, 1892, Charles H. Talbott executed a deed of trust on certain improved real estate in the city of Richmond to secure the payment of twenty negotiable notes, aggregating thirty-five thousand, eight hundred dollars ($35,800), drawn by Talbott, to his own order, payable at the City Bank of Richmond, and secured in the order of their maturity. The first note was payable six months from that date, and the other nineteen notes were each payable six months later than its immediate predecessor, the last or twentieth note of the series being payable ten years after date.

The notes were afterwards, for value, endorsed in blank, and delivered by Talbott to William A. Marburg, of Baltimore, Md. The first, second and third notes were paid as they respectively

matured. A few days before the fourth note, which was for $2,690, became due, Talbott applied to Marburg to extend the time for its payment, or if he was not willing to do that, to assign it to some one willing to purchase it. Marburg refused to sell the note, but extended the time for its payment ninety days, Talbott paying the interest and executing his negotiable note for a like sum payable at that time. Some days before the renewal note became due, it, with the original note, was sent by the National Union Bank, of Maryland, to the City Bank, of Richmond, for collection. The latter bank delivered the original note, and, as is contended by the appellant and Marburg, the renewal note also, to Elam, either as purchaser or payor. Shortly before the fifth note of the series, payable thirty months after date, became due, it was also sent to the City Bank for collection, and was delivered to Elam under substantially the same circumstances as those under which he acquired the $2,690-note. The money which was paid by Elam was the full amount of both notes, and was received by Marburg.

When the sixth note of the series, which was payable in December, 1895, became due, the time for its payment was extended for four months, and upon the failure of Talbott to make payment, when the renewal note became due, the trustees in the deed of trust were required to make sale of the property.

They filed the bill in this case to have the trust executed under the direction of the court, because, as they allege, they learned for the first time when they were about to execute the trust that one Henry Grimmell held the twenty-four months note for $2,690, having taken up the same about the time of the maturity of the 90 days renewal note, and that the thirty months note was held by J. B. Elam who had acquired it about the time of its maturity; and that they had no evidence that Marburg had assigned these notes to the parties who held them, and were demanding that the property should be sold for cash sufficient to pay them.

Talbott and wife, Marburg, Grimmell and Elam were made parties defendant to the suit.

Elam filed his answer claiming that he had purchased the notes, and afterwards transferred the twenty-four months note to Grimmell, and that he, Elam, was still the holder of the thirty months note.

Grimmell answered stating that he had purchased the note held by him from Elam, and both asserted their right to have the property sold, and the notes held by them paid in their order of priority as fixed by the deed of trust.

Marburg filed his answer, denied that he had sold the notes, as claimed by Elam and Grimmell, or authorized their sale, and denied that those notes could be paid out of the proceeds of the trust property until the notes held by him were paid.

Subsequently, the appellant, Emilie Cussen, who had a large debt secured by a subsequent deed of trust upon the same property, became a party to the suit. In her answer, she asserted her claim under her deed of trust, alleged that the notes held by Elam and Grimmell had been satisfied and were no longer liens upon the property, and that she was entitled to have the trust subject sold for the payment of her debt free from the liens of these notes.

The matters involved in this appeal depend upon the question whether the notes in controversy were paid, or purchased, by the appellee Elam when he obtained them from the City Bank. Elam and the cashier of the bank are the only witnesses as to what occurred when he acquired them. Elam's version of what took place is as follows:

" On the 11th of March, 1895, Mr. Charles Talbott came to see me, at my office, and stated that a note of his for $2,690 was about to mature; that he was unable to pay it, and desired me to investigate the matter and inform him whether I could effect an extension thereof. He stated what the security was, giving the date of the note, and said that it was one of twenty notes secured

upon his two houses next to the corner of Second and Franklin streets; that the original transaction had been negotiated by Mr. Jackson Brandt; that the three notes prior to the said note of $2,690 had been paid by him, and that this note of $2,690 which he wished extended was then held by the City Bank of Richmond. I asked him whether this note was a prior lien to the notes maturing subsequently under said deed. He said that he did not remember, but thought, in any event, the security was ample, stating his estimate of the two houses, and undertaking to convince me that even if it were not a prior lien there was no doubt about the security. I stated to him that if the City Bank was the holder of the note, and if it was a prior lien upon the property, that if the notes had priority one over the other as usual, I could probably effect the extension of the note for $2,690 for him, provided the bank was the holder and would transfer the same by delivery; and that I would investigate the matter, and inform him of the result. I then went to the office of Mr. James W. Sinton, the cashier of the City Bank, and inquired if he held the said note for $2,690, naming the date and time, and the amount of it, stating to him that my purpose was not to pay the note but to effect an extension of it, provided, upon investigation, the security was satisfactory. He stated that he held the note, and upon my request to look at it he went to his vault and brought me the note referred to by Mr. Talbott. I stated to him that I would investigate the security, and if it were found satisfactory I would wish to take up said note for the purpose of extending it. He said that would be all right, and, in that event, I could bring my check for it. I went then to the clerk's office of the Chancery Court and read the deed securing said notes, and found that the notes were liens in the order of their maturity; that they were drawn by Charles H. Talbott to his own order, and endorsed by him in blank, and secured to the holder or holders thereof, and that the property described was as represented by Mr. Talbott. I then went to see the client

who had a day or two previously stated to me that he would have, within a day or two, about three thousand dollars for investment in real estate paper. I stated to him that I could probably give him a note for $2,690, stating to him what the security was, and he consented to take it. I then took my firm's check for $2,690, went to the office of Mr. Sinton, at the City Bank, stated to him that I had satisfied myself as to the security of said note about which I had spoken to him previously on the same day, and that I was prepared to take up said note. He brought me the note, and I handed him the check."

" Then, some three months later, Mr. Talbott called and stated that the note for $630, which was the next note in order under said deed, was very nearly due, and that he was unable to pay it, that he would be glad if I would effect an extension of it in the same manner as I had done the other. I told him I thought I could effect an extension of that in the same manner, and accordingly, on the 17th of June, 1895, as I now remember, I went with my firm's check to Mr. Sinton's office, and said to him that I would be willing to take up and extend said note for $630 if I might do so in the same manner in which I had taken up the former note for $2,690; that this was one of the same series of notes secured by the same deed. He said ' very well,' and went and brought me the note for $630, taking my check for the same, and delivering to me the said note."

The cashier of the bank gives no connected account of what did occur. His recollection of it seems to be very imperfect, many of his statements are vague and indefinite, in some instances contradictory, and altogether his testimony is very unsatisfactory. But in respect to the facts which are to our minds controlling in determining the character of the transaction when the bank parted with the notes, the cashier's evidence tends to sustain Elam's account of what occurred. Elam says that, when he went to the bank to enquire into the matter, and to see whether or not he would take up and extend the $2,690-note,

he told the cashier what his purpose was, and that he did not wish to pay the note. Upon this point the cashier says: "I remember absolutely Mr. Elam's coming to me and making enquiry regarding certain Talbott notes—I do not now recall the date—and my giving him what information I could, and his statement that he did not wish to pay said note or notes." Again when asked: "Do you or not recall that, when Mr. Elam told you that his object was not to pay said note, but to take it up and extend it, provided he found the security satisfactory upon investigation, you told him he could do so?" He answered: "I recall his stating that he wished to make certain examinations before taking up said note, and I stated that he could get the note." When asked whether or not the $630-note (the other note in controversy) was delivered to Elam "as a paid note or as a transferred note," he replied: "We regarded it as an unpaid note." Elam states positively that the Baltimore bank's endorsements on the notes "for collection" were cancelled when they were delivered to him, and that when he first went to the bank he enquired if it held the $2,690-note, and was told that it did, but he was not informed that it held it for collection. When the cashier was asked whether, in any of his interviews with Elam in reference to the notes, he informed Elam that his bank held the notes for collection, and that it had no authority to sell or transfer them, he replied: "I have no recollection of so stating to Mr. Elam."

Whether a transaction like this is a payment or a purchase is a question of intention—of fact rather than of law—and is to be settled by the evidence. *Wood* v. *Guarantee &c. Co.*, 128 U. S. 416. It is undoubtedly true, as contended by counsel for appellant, that it is essential to a sale that both parties should consent to it; but it is as difficult to see how there can be a payment and an extinguishment thereby of a debt, by a stranger who is under no obligation to pay, when there is no intention to pay, as it is to see how there can be a sale without an intention to sell. This assent, however, need not be expressed, nor shown by direct

evidence. It may be inferred from the circumstances attending the transaction, and often is. *Ketchum* v. *Duncan,* 96 U. S. 659.

It appears from the record that Elam, who was neither a party to, nor under any obligation to pay, the notes, did not intend to satisfy or discharge, but to purchase them as an investment; that he informed the bank of such intention; that with full knowledge of his purpose to purchase for an investment and not to pay, it received his money, and delivered the notes to him uncancelled. These facts and circumstances show that Elam intended to purchase, and that the City Bank, of Richmond, tacitly assented to the sale. Upon no other theory can its conduct in receiving Elam's money, and delivering the notes uncancelled, with full knowledge that he intended to purchase them as an investment and not to pay them, be explained.

The authorities hold that a transaction like that under consideration is a purchase, and not a payment. It was said by the Supreme Court of the United States, in a case similar to this upon the question under consideration, that " in cases like that before us, where the intention to continue the existence of the note and not to cancel it by payment is made evident, when the money is paid to the collecting agent appointed to receive it, and the owner of the note receives the amount due to him, the authorities sustain the transaction as a purchase." *Dodge* v. *The Freedsman Savings & Trust Co.,* 93 U. S. 379; *Ketchum* v. *Duncan* 96 U. S. 659; *Carter* v. *Burr,* 113 U. S. 737; *Swipe* v. *Leffingwell,* 72 Mo. 348; *McDonnell* v. *Burns,* 28 C. C. A. 174; *Brice's Appeal,* 95 Penn. St. 150.

The case of *Citizens Bank* v. *Lay,* 80 Va. 436, which was much relied on by the appellant's counsel to sustain his contention that the notes must be considered as paid, whilst clearly right upon the facts of that case, sheds but little, if any, light upon this, because of the material difference in the facts of the two cases. In each case the party who had taken up the paper

was a stranger to it, but in that case he was, by another contract, expressly and primarily bound to pay it, whilst in this case he was neither a party to the paper, nor bound in any way for its payment.

When one who is primarily bound for the payment of a note takes it up, it is a payment—an extinguishment of the note—no matter what his intention may have been. 2 Dan. on Neg. Inst., secs. 1236, 1238; *Citizens Bank* v. *Lay*, 80 Va. 436, 440.

The notes in question having been purchased by Elam are not extinguished, as appellant contends, but are existing liens upon the trust subject, and are entitled to priority over the deed of trust given to secure her debt. The trial court so held, and its decree upon that question must be affirmed.

Under rule *IX* of this court the appellees, Elam and Grimmell, insist that the decree appealed from is erroneous in so far as it provides that Marburg shall have priority over them, and shall be first paid out of the proceeds of the trust subject, and ask that the decree in that respect be corrected. This contention we do not think can be sustained. The notes held by them respectively were purchased by Elam under circumstances which make it equitable that their payment should be postponed until the notes held by Marburg have been paid. When Elam acquired them, one note was overdue, and held by the City Bank for collection. It had no authority to sell them, but of this Elam had no actual knowledge, but he did have notice of circumstances which were sufficient to put him upon enquiry, which enquiry would have disclosed the facts of the case. The note for $2,690 being overdue when Elam purchased it, he acquired nothing but the actual right and title of the City Bank. He took it subject to all the equities to which it was subject in its hands. *Arents* v. *Commonwealth*, 18 Gratt. 750; *Davis* v. *Miller*, 14 Gratt. 1; 1 Dan. on Neg. Insts. sec. 724a.

The other note had not yet matured, but it, as well as the $2,690-note, had upon it the restrictive endorsement of the

VOL. XCVII—2

Baltimore bank cancelled, according to Elam's statement, but still both endorsements were legible through the pen marks by which they were cancelled. These endorsements destroyed the negotiability of the notes, and was notice to persons dealing with the City Bank that it held them for collection. only. The cancellation of the endorsements changed the character of the notes, and restored their negotiability. This was a material change in the character of the notes apparent upon their face sufficient to put Elam upon enquiry, (*Angle* v. *North Western Mutual Life Ins. Co.*, 92 U. S. 330; 1 Dan. on Neg. Insts., 4th ed., sec. 795), which enquiry, if pursued, would have disclosed the fact that the City Bank only held the notes for collection, and had no authority to sell them. Elam made no such enquiry, gave no notice to Marburg of his purchase, allowed him to remain under the belief that the notes had been paid, and that the security for the payment of other notes held by him, thereby increased, which latter object was no doubt the chief reason why he refused to sell the larger note before its renewal. If, as Elam and Grimmell contend, the trust property will sell for a sum sufficient to satisfy the notes held by Marburg and themselves, then no injury will result to them except a delay of two or three years in getting their money, as the property by consent is to be sold for one fourth cash, and the residue payable in one, two and three years. If, on the other hand, it does not sell for a sufficient sum to pay all the notes, we do not think it would be equitable or just, under all the circumstances of the case, that Marburg should suffer loss resulting from Elam's negligence when he purchased the notes, and the delay of the holders in asserting their claim.

We are of opinion, therefore, that there is no error in the decree complained of, and that it should be affirmed.

*Affirmed.*