# Staunton

EASTERN SHORE OF VIRGINIA PRODUCTION CREDIT
ASSOCIATION v. GARNETT A. KELLAM, ET ALS.

September 11, 1936.

Present, Holt, Hudgins, Gregory, Chinn and Eggleston, JJ.

The opinion states the case.

*J. Brooks Mapp, I. P. Whitehead* and *Peyton G. Jefferson,* for the appellant.

*Gunter & Gunter,* for the appellees.

CHINN, J., delivered the opinion of the court.

This is a suit in equity brought by the appellees, Garnett A. Kellam, Chas. R. Savage and Alfred W. James, trustees of the Farmers & Merchants National Bank of Onley, Va., against the appellant, Eastern Shore of Virginia Production Credit Association and others, to enjoin and restrain Stewart K. Powell and Warner Ames, trustees, from making sale of certain property under a deed of trust from James H. East and wife, bearing date on November 28, 1928.

A perpetual injunction was granted by the court below in accordance with the prayer of the bill, from which decree the Credit Association appeals.

The record discloses the following facts:

In the latter part of the year 1930, James H. East and Maggie L. East, his wife, were indebted to the Farmers & Merchants National Bank of Onley, Va., in the sum of $7,426.30, evidenced by an unsecured note. Herman L. East, son of the aforesaid James H. and Maggie L. East, was also indebted to the said bank in the sum of $15,000, likewise evidenced by his unsecured note. James H. and Maggie L. East possessed considerable real estate, including a building in the town of Onancock generally referred to as the "Crockett Concrete Building." In addition to the sum owed the bank, James H. and Maggie L. East were indebted to other parties who were threatening them with judgments. While this state of affairs existed, Herman L. East, desiring to assist his parents in their financial difficulties, approached Dr. Will F. Kellam, a director of the said bank, whom he frequently consulted in regard to his business affairs, with a proposition which he thought would aid his father and mother and himself personally and also benefit the bank. The proposition was that if the bank would lend him, Herman L. East, an additional $4,500, increasing his indebtedness to the bank to the extent of $19,500, he would secure the full amount by a deed of trust on his real estate, and reduce the indebtedness due the bank by his father and mother to $5,500, to be secured by a deed of trust constituting the first lien on the "Concrete Building" in Onancock. At that time, there was a deed of trust on the "Concrete Building," executed November 28, 1928, to Stewart K. Powell and Warner Ames, trustees, to secure the Citizens Savings Bank of Onancock a bond of James H. and Maggie L. East for $350, and also to secure to Gunby Motor Company, Inc., Salisbury, Md., four bonds of equal date with the deed of trust, in the principal sum of $765 each.

Dr. Kellam placed this proposition before the board of directors of his bank, and the same was duly accepted. In pursuance of the agreement, Herman L. East and wife executed a deed of trust to Benjamin T. Gunter, Jr., trustee, conveying eight separate tracts or parcels of land and his barrel factory at Tasley to secure the bank a note of the said Herman

L. East for $15,000, and also to secure any additional amount the bank might lend him, not to exceed in all $23,500. Likewise, James H. and Maggie L. East, in furtherance of the aforesaid agreement between Herman L. East and the bank, executed a deed of trust conveying to Benjamin T. Gunter, Jr., trustee, the aforesaid "Concrete Building" in Onancock, to secure the bank the payment of their bond for the sum of $5,500. The entire transaction was finally consummated in January, 1931, when the bank placed to the credit of Herman L. East the sum of $4,500, thereby increasing his loan to $19,500; Herman L. East reduced the loan to James H. and Maggie L. East from $7,426.30 to $5,500, and the aforesaid deeds of trust securing the respective loans were duly recorded.

At the time of the above mentioned transaction, the Gunby Motor Company, through its attorney, Mr. Stewart K. Powell, of Onancock, Va., was pressing James H. and Maggie L. East for the payment of their indebtedness, secured by the deed of trust of November 28, 1928, on the "Concrete Building." The evidence shows that one of the bonds for $765 each, secured by said deed of trust, was paid direct to Gunby Motor Company, when the same fell due on August 1, 1929, and that in the month of January, 1931, after his loan was increased, Herman L. East drew a check payable to Gunby Motor Company on the Onley bank for $2,000, and on the 24th day of January, 1931, drew a like check for $634.55 to take up the three bonds then remaining unpaid. Both of these checks were delivered to Gunby Motor Company's attorney, Mr. Powell, who promptly forwarded them to his client.

On March 18, 1931, Gunby Motor Company sent Mr. Powell the four $765 bonds of James H. and Maggie L. East, with the following notation written across the face of each of them:

"Paid

"Gunby Motor Co. Inc."

These bonds marked paid as aforesaid, remained in the possession and care of Mr. Powell without question on the

part of East from March 18, 1931, until June 7, 1932, when Mr. Powell wrote Gunby Motor Company that Herman L. East had recently come to his office and told him that he wanted the four $765 bonds assigned to him, but that he refused to do this unless authorized.

In reply to that letter under date of June 8, 1932, Gunby Motor Company wrote Mr. Powell as follows:

"We have no objection to your assigning these bonds in the deed of trust to Mr. Herman L. East, if it was his money we accepted in payment of same, provided the bonds and deed of trust are assigned without recourse on us in any event, and would involve no liability on our part whatsoever."

Upon receipt of this letter, Mr. Powell entered the following endorsement on the back of each of said bonds: "1931, Jan. For value the within bond is assigned to Herman L. East, without recourse. Gunby Motor Co. Inc., by—Stewart K. Powell, Atty." These bonds continued to remain in Mr. Powell's possession until sometime in the year 1933. In March, 1933, Herman L. East, through his attorney, Mr. George L. Doughty, made application to the Regional Agricultural Credit Corporation for a loan. Along with his application he filed a schedule of his live stock, real estate, etc., and made a financial statement. This statement did not include the four Gunby bonds secured by the deed of trust of November 28, 1928, or either of them. The Credit Corporation declined the application because of insufficiency of security, and thereupon, Mr. Doughty forwarded to the corporation the four Gunby Motor Company bonds, but as the bonds were marked paid across their face, they were returned to Mr. Doughty, who in East's behalf, requested Mr. Powell to have the cancellation corrected on the ground that the bonds were marked paid in error. Mr. Powell thereupon sent them to the Gunby Motor Company with the following notation across the face: "1933, April 28, marked 'paid' in error." This notation was signed "Gunby Motor Co. Inc., J. Y. Gunby, Treas.," and the bonds forthwith returned to Mr. Powell. They were thereupon accepted by the Credit Corporation as security. The loan from the Credit Corpo-

ration was paid, and in 1934 East made application to the Eastern Shore Production Credit Association for a loan and assigned the same Gunby bonds as part security for the loan. East died in November, 1934. When the loan fell due the Credit Association called upon the trustees therein named to sell the "Concrete Building" under the deed of trust of November 28, 1928. Hence this suit, with the result hereinbefore mentioned.

Appellees allege in their bill and here contend that the four bonds originally payable to the Gunby Motor Company for $765 each and secured by the deed of trust of November 28, 1928, to Stewart K. Powell and Warner Ames, trustees, were fully paid and satisfied and, therefore, no longer constitute a lien on the said "Concrete Building," and that the bond for $5,500 of James H. and Maggie L. East payable to the Farmers and Merchants National Bank of Onley, Va., secured by a deed of trust to Benj. T. Gunter, trustee, constitutes a first lien on the said property, after the note for $350 payable to Citizens Saving Bank secured by the deed of trust of November 28, 1929, has been paid.

It is contended by the appellant, on the other hand, that the four bonds referred to were properly and regularly assigned to Herman L. East, and since the deed of trust of November 28, 1928, has never been marked satisfied, his assignee, Eastern Shore of Virginia Production Association, is entitled to have the said deed of trust enforced for its benefit.

The sole question at issue, therefore, is whether Herman L. East paid the Gunby bonds or whether he purchased them, which "Is a question of intention—of fact rather than of law—and is to be settled by the evidence." *Cussen v. Brandt*, 97 Va. 1, 32 S. E. 791, 793, 75 Am. St. Rep. 762; *Carter v. Piercy*, 156 Va. 640, 159 S. E. 154; *Citizens Bank v. Lay*, 80 Va. 436, 440. If it was East's intention at the time to pay off and extinguish the debt evidenced by the bonds, they thereby lost their potency as a lien on the "Concrete Building" which he could not revive by having the bonds subsequently assigned to him as hereinbefore detailed. If on the other hand, it was East's intention to continue the existence

of the bonds and not to cancel them by payment, then the transaction constituted a purchase. *Cussen* v. *Brandt, supra,* and authorities therein cited.

The evidence in the instant case is uncontroverted. As previously stated, one of the $765 bonds payable to Gunby Motor Company was paid when the same became due on August 1, 1929, and there is no evidence to show whether this bond was paid by the obligors, James H. and Maggie L. East, or whether it was paid by Herman L. East. It is testified by Mr. Powell that when the checks to take up the other three bonds secured under the deed of trust were delivered to him, Herman L. East made no request and gave him no instruction whatever as to his intentions in regard to the bonds—in other words whether he intended to cancel the same by payment or have them assigned to him. Mr. Powell says that the only statement East ever made to him in regard to this subject was, that when he came to him in June, 1932, East told him he thought it was understood that the bonds would be assigned to him.

It is testified by Dr. Kellam that it was understood between Herman L. East and the bank that East would not only reduce the indebtedness of his father and mother from $7,426.30 to $5,500, but that he would also pay off the Gunby lien on the "Concrete Building," in order that his father and mother, James H. and Maggie L. East, might give the bank a first lien to secure the $5,500. The evidence shows that East, in accordance with his understanding with the bank, proceeded to pay off the Gunby bonds, through Mr. Powell, out of the money received from the bank, and arranged with the attorney of the Citizens Savings Bank of Onancock for the payment of the $350 bond due said bank. Considering this understanding on the part of East and the bank, according to Dr. Kellam's testimony, it seems to us the only conclusion to be reached is that it was East's intention at the time he paid the bonds through Mr. Powell, to cancel them in order to comply with his understanding, and that at the time had no intention of assuming the role of purchaser of the bonds, with a view of having the same assigned to him. It is true

that neither the Gunby Motor Company nor East had the deed of trust marked satisfied, but is is evident that when the Gunby Motor Company cancelled the bonds by marking them paid and sent them to Mr. Powell, they considered that this was all that was necessary to complete the cancellation on their part, and that they would have nothing more to do in regard to the matter. Appellant lays considerable stress upon the fact that the bank failed to see that the deed of trust was marked satisfied and also upon the fact that East told Dr. Kellam sometime in 1932, that he was not going to mark the deed of trust satisfied. Dr. Kellam says that the bank took no steps to have the deed of trust marked satisfied because he and the other officers of the bank had perfect confidence in East, and when they understood that he had carried out his promise to pay the bonds, they considered that was all that was necessary to extinguish the Gunby debt. It is also testified by Dr. Kellam that East told him when the transaction hereinbefore referred to with the bank was first consummated, that if in the end there was anything over and above what was owing by his father and mother, he expected to share it with them in order to reimburse himself for what he had paid out for them, but that when he subsequently discovered that his brother and sister had obtained a deed of trust from his father and mother on their property for $3,500, East told him that his brother and sister were trying to take advantage of him, and he was not going to mark the deed of trust securing the Gunby bonds satisfied, in order to try and protect himself. This reason on the part of East for not marking the deed of trust satisfied is corroborated by Mr. Powell's testimony, who says that East told him in a conversation about the bonds: "I don't know what I am going to do about those bonds *of the indebtedness that I have paid off*. I am apprehensive that my family is not going to treat me right." These conversations with Dr. Kellam and Mr. Powell, after the transaction with the bank had been consummated and the bonds marked paid by Gunby Motor Company, seem to clearly indicate that East's reason for wishing the bonds assigned to him nearly eighteen months after they had been paid and came into Mr. Powell's possession, was to circum-

vent as far as he was able, the efforts of his brother and sister with whom he was not on good terms, to obtain for themselves the equity in their father's and mother's property and deprive him of the opportunity to reimburse himself for the money he had paid out for them. While this tends to show a subsequent intention on the part of East to make an effort to place himself in a position of purchaser of the bonds, this does not affect the question of his intention at the time the bonds were paid in January, 1931, which is the real inquiry.

Considering the facts and circumstances surrounding the transaction at that time, including East's promise to the bank to give them a first lien on the property, which promise he manifestly endeavored to carry out in good faith; including the fact that he allowed the bonds in question to remain in Mr. Powell's possession from March 18, 1931, until June 7, 1932, without any request that the bonds be assigned to him; and including the fact that he paid the bonds through Mr. Powell without making any such request or intimating that he was purchasing the bonds, we think the lower court was right in holding that the bonds in question had been paid by East and the sale of the property under the deed of trust for the payment of the said bonds should, therefore, be enjoined.

Counsel for the appellant rely upon the cases of *Cussen* v. *Brandt, supra,* and *Carter* v. *Piercy,* 156 Va. 640, 159 S. E. 154, and the cases therein cited, but the reading of those cases clearly shows that the facts render them inapplicable to the case at bar. In both of those cases the facts show plainly that the party paying the notes did not intend to satisfy or discharge them, but to purchase them as an investment.

The appellant next contends that the decree of the lower court was wrong because, regardless of the question of whether Herman L. East paid or purchased the notes, the equities are with the appellant for the reason the deed of trust had not been marked satisfied and the bank gave no notice of its claim that the notes had been paid. While it is true that the appellant knew that the deed of trust had not been marked

satisfied, it had full notice of the fact that the notes had been marked paid across their face by Gundy Motor Company, and that this notation had been cancelled and the notes assigned to East long after the notes were actually paid by him. These facts were sufficient to put the appellant on inquiry in regard to the transaction and when it accepted the notes with this knowledge on their part, we think that it assumed the risk of the validity of the notes.

It is finally contended that there is no corroboration of the testimony of Dr. Kellam, who was the sole representative of the Farmers and Merchants National Bank of Onley, Va., in the transaction with Herman L. East, who is incapable of testifying by reason of death.

We think the testimony of Dr. Kellam is sufficiently corroborated by the facts and circumstances to be admissible. The records show that James H. and Maggie L. East, his wife, executed the deed of trust on the "Concrete Building" to secure the bank the payment of the sum of $5,500; that Herman L. East and wife, executed a deed of trust to secure the bank his indebtedness of $15,000 and an additional amount not to exceed $23,500; that East paid Gunby Motor Company the bonds secured by a deed of trust of November 28, 1928, in accordance with Dr. Kellam's testimony, and the same was marked paid by Gunby Motor Company and sent to their attorney, Mr. Powell; that East made no request of Mr. Powell when he paid the bonds or at any time thereafter until June, 1932, to have the bonds assigned to him; that the bank granted East an additional loan of $4,500, which was placed to his credit and the Gunby notes paid out of the same by checks; that Herman L. East arranged for the settlement of the $350 bond constituting the first lien in the deed of trust of November 28, 1928, in accordance with his promise to have his father and mother give the bank a first lien on the "Concrete Building," as testified by Dr. Kellam.

Upon careful consideration of the whole case we are of the opinion that the decree of the lower court should be affirmed.

*Affirmed.*

HUDGINS, J., dissenting:

The acts and statements of Herman L. East, relied upon in the majority opinion to corroborate the testimony of the agent for the Farmers and Merchants National Bank, to the effect that Herman L. East made a secret verbal agreement with the bank to release the deed of trust in question, convicts him of perpetrating a wilful fraud upon the appellant and the bank. Eliminating the secret contract, same acts and statements are entirely consistent in themselves, and in accord with the conduct and dealings of an honest man, which the uncontradicted testimony of all witnesses clearly show Herman L. East to have been.

In my opinion the claim of appellee has not been established or the testimony of the agent corroborated, as required by law. So viewing the case, Herman L. East's action in the purchase of the Gunby bonds and his subsequent statements and acts transferring them to the appellant are in accord with the reputation he enjoyed up until the time of his death. I think the decree of the trial court should be reversed and judgment here entered for appellant.