## BERNARD N. BAKER vs. ANDREW D. MELOY.

*Mortgage Bonds—Payment or Sale of Coupons—Rights of Holders of Detached Coupons.*

When the holders of coupon bonds secured by a mortgage present to the mortgagor the interest coupons for payment and receive the checks of a third party therefor, such coupons will be treated as paid and cancelled so far as the bonds and mortgage are concerned and the party who paid the coupons is not entitled to the security of the mortgage as against the bondholders, unless it be shown that the holders intended to sell the coupons.

The holders of certain bonds issued by a corporation and secured by mortgage presented the overdue interest coupons for payment at the office of the company and received therefor checks signed by a firm who were the fiscal agents of the corporation. Some of these holders expressly notified the company that they did not sell the coupons but presented them for payment and none of the holders intended to sell. The bonds from which these coupons were detached were subsequently bought by the appellant who had no notice that the detached coupons had not been paid. Upon sale under the mortgage the proceeds were insufficient to pay the bonds in full. The appellee as owner of the coupons so paid, by assignment from said fiscal agents, claimed the right to share in the distribution of the proceeds of sale equally with the holders of the bonds. *Held*, that the coupons had not been sold by the original holders, since they did not intend to make a sale when they presented the coupons for payment, and that the party paying them and his assignee are not entitled to share with the bondholders in the distribution of the proceeds of sale.

Appeal from an order of the Circuit Court No. 2, of Baltimore City (DENNIS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*J. Wilson Leakin*, for the appellant.

It is submitted that there was no intention on the part of Flower to buy the coupons ; second, that there was no notice to the bondholders of any intention on the part of Flower to buy. The only evidence adduced is the fact that they were paid by individual check by Flower. This fact standing alone is not sufficient to give them notice. (*R. R. Co.* v. *Gist*, 34 Fed. Rep. 642.) The mere fact of a check of a third party in payment of a debt is no notice that he is taking the debt up. Attorneys at law, agents, representatives of various kinds pay the debts of their principals or persons, or corporation, with whom they have an *interest*, by *individual check*, and it has never been heard that the person receiving the check should be held to have assigned his claim to them. Indeed in this very case Flower & Company paid for the Atlantic Trust and Deposit Company $40,000 and over of its debts of various kinds by the identical kind of check with which they are said to have purchased these coupons, and the utmost that could be said would be that the person receiving the check would be put on inquiry to ascertain the relation of Flower to the company and charged with knowledge of what that inquiry would have developed, which would have been that Flower had obtained from the company certificates to the amount of $100,000 without paying for them; that he had paid other debts of the company with checks of this identical character to the amount of $40,000 ; that he was vice-president, director, fiscal agent, and largest stockholder, under contract to float over a million dollars of the stock of the company, which would be an impossibility if the coupons in question were not paid and foreclosure had followed, and that the day before all of the checks but one were drawn he had written Mr. Hill, who was appointed as vice-president of the Atlantic Trust and Deposit Company, requesting to draw these very checks *in payment* of the second mortgage coupons. Nothing was said to indicate to the holders of the bonds and coupons that they were to do other than cash their coupons at the office of the company, whose duty it was to pay them, and it is submitted,

therefore, if an inquiry had been made the coupon holders would have been amply justified in assuming that they were receiving payment of their coupons.

The effort here is to lessen a fund of $100,000 proceeds of sale under a deed of trust to secure bonds amounting to $150,000. When the claimant bought the coupons which were overdue, he did it under the theory that the property was worth $600,000, and the mortgages amounted to $450,000. With that valuation his claim would be entirely good, but he is not in position when the property sold for $400,000 instead of $600,000 to ask that the fund applicable to the payment of the bonds producing only 49 cents on the dollar should be reduced for the payment of his coupons. Not only did all of the original holders of the coupons and bonds have nothing to give them notice of an intention upon the part of Flower to purchase the coupons, but there is not a scintilla of evidence of any sort that the appellant, a *bona fide* purchaser for value and without notice of the bonds, had anything to put him on inquiry in regard to these coupons. The claimant is therefore estopped from setting up any secret equity against him. *Union Trust Co.* v. *Monticello R. Co.*, 63 N. Y. 314; 2 *Cook on Corporations*, sec. 771; *Cameron* v. *Tome*, 64 Md. 510; *Martin* v. *Bank*, 94 Tenn. 181; *Lloyd* v. *Wagner*, 93 Ky. 651; *Atlantic Trust Co.* v. *R. Co.*, 17 App. Div. N. Y. 215; *Haven* v. *R. Co.*, 109 Mass. 96; *Wood* v. *Guarantee Co.*, 128 U. S. 424; *Ketchum* v. *Duncan*, 96 U. S. 662; *Veiner* v. *Farmers' Loan, &c., Co.*, 90 Fed. Rep. 359; *Hollister* v. *Stewart*, 111 N. Y. 663.

*Alfred S. Niles* (with whom was *Oscar Wolff* on the brief), for the appellee.

1. When money is advanced to a corporation to pay interest upon its bonds and the coupons are paid from this money, such coupons are cancelled in law and cannot be revived by any agreement between the company and the person advancing the money. *Virginia* v. *C. & O. Canal Co.*, 32 Md. 501; *Fidelity Co.* v. *R. R. Co.*, 138 Penna. 505; *Wood* v. *Guarantee*

*Co.*, 128 U. S. 416 ; *Bockes* v. *Hathorn*, 20 Hun. 503, 510;
*South Carolina R. R.* v. *Gest*, 34 Fed. Rep. 628.

2. Even though a person actually buys coupons falling due,
either to advance some interest of his own or of the debtor
corporation, but his true relationship to the matter is so con-
cealed that the holders of the coupons present them for pay-
ment and not for sale, and have a right to assume that they
are paid and extinguished, the lien of the coupons is extin-
guished and the coupons are considered as cancelled in law.
*Cameron* v. *Tome*, 64 Md. 507 ; *Union Trust Co.* v. *M. & P.
J. R. R. Co.*, 63 N. Y. 313 ; *Haven* v. *Grand Junction R. R.
Co.*, 109 Mass. 96 ; *Farmers' Loan and Trust Co.* v. *Iowa
Water Co.*, 78 Fed. Rep. 881 ; *Martin* v. *Bank*, 94 Tenn. 176.

3. When a person actually buys coupons falling due, either
to advance some interest of his own or of the debtor corpora-
tion, and there are circumstances attending the matter which
ought to give notice to the holders of the coupons as to the
character of the transaction, or put them on inquiry as to the
same, the coupons are not cancelled, but retain their lien as
security, even although the holders of such coupons presented
them for payment and not for sale.

4. If the coupon holder has knowledge, or notice to put
him on inquiry, that some one, under no obligation to pay
them, is giving the money in return for the coupons and tak-
ing no other receipt, such holder has no right to assume that
the coupons are paid and extinguished ; but upon the con-
trary is held to have sold his coupons, if the intention of the
other party was to make a purchase.    *Ketchum* v. *Duncan*, 96
U. S. 662 ; *Claflin* v. *R. Co.*, 8 Fed. Rep. 134.

5. The general principle of law is that a payment made to
a mortgagee by a third party who is under no obligation by
contract to pay the debt, will not operate as a satisfaction of
it unless it be manifestly the intention or interest of the party
making the payment that it should so operate.    *Walker* v.
*Stone*, 20 Md. 198.

The questions of fact, therefore, on which this case depends,
are : 1. As between the debtor corporation and R. C. Flower

& Co., was the money lent to the corporation and the coupons paid with the money so lent, or were the coupons purchased? 2. If a purchase were intended as between the company and Flower, did the holders of the bonds have notice that R. C. Flower & Co., who were under no obligation to pay the coupons, and not the debtor corporation, gave the money received in exchange for them and took no other receipt? If the law as above stated be correct, these are the only questions before the Court.

Merely because he acquired the bonds *after* the coupons had been detached, the Court is asked by appellant to hold that as to him the transaction is a payment, even although in fact it was intended both by Flower & Co. and by the Atlantic Trust Company to be a purchase, and even although the parties who received the money had such notice that as to them also it was a purchase. This position of appellant cannot be maintained. When the coupon is separated from the bond it becomes a separate and independent claim. *Short's Law of R. R. Bonds and Mortgages*, 106. No authority has been found by us which asserts that a purchaser of a bond has the right to assume that all coupons which have been clipped off have been paid, or that a man, by simply purchasing a bond, estops the prior purchaser of coupons clipped from that bond from asserting his claim on those coupons as against the bond purchaser.

The evidence in the case establishes that as between Flower and the corporation the coupons were purchased and not paid. And that the bondholders had notice that Flower & Co., who were under no obligation to pay the coupons, gave the money which was received in exchange for them and took no other receipt.

*George E. Mills* also filed a brief for the appellee.

JONES, J., delivered the opinion of the Court.

This is an appeal from an order of Circuit Court No. 2, of Baltimore City, overruling exceptions filed in this cause by the

appellant to the ratification of an auditor's account and finally ratifying said account.

The controversy raised by the appellant's exceptions grew out of the following facts. The Massachusetts Building Company being the owner of a building in the city of Baltimore conveyed the same to John W. Linton by whom in the month of October, 1899, it was conveyed to the Atlantic Trust and Deposit Company. These conveyances were made subject to two deeds of trust held at the time by the Mercantile Trust and Deposit Company—the first of these deeds of trust securing bonds to the amount of $300,000, and the second to the amount of $150,000. To these bonds there were attached the usual coupons, representing the instalments of interest to accrue, which on their face were payable "at the office of the Mercantile Trust and Deposit Company of Baltimore, in the city of Baltimore," on the first day of August and the first day of February. A sale of the property in question was made under the second deed of trust and the proceeds of sale proved insufficient to pay the bonds secured thereby. At the time of the sale the appellant was the holder of certain of these bonds and the appellee held certain coupons which had been detached from these same bonds before they passed to the appellant. The appellee now brings in these coupons and claims to have them paid out of funds produced by the sale made under the deed of trust upon equality with the bonds held by the appellant. The auditor in making distribution of the funds stated two accounts "A" and "B" in accordance with instructions from the respective parties. In account A the claim of the appellee was disallowed; and in account B the same was allowed equally *pro rata* with the bonds of the appellant. Each party excepted to the account which was stated contrary to the instructions given in his behalf. The Court below, upon the testimony taken by both parties before the auditor and returned by him, rejected account A and ratified account B.

The exceptions of the appellant to account B state that he excepts to the allowance of the claim of the appellee "based

on $3,725, coupons bought" by him (appellee) "when over-
due, from the assignee of R. C. Flower and Company."

1st. Because it never was the intention of said R. C.
Flower and Company to buy said coupons from their holders
but to advance money to the Atlantic Trust and Deposit
Company to pay the same.

2nd. Because the holders of said coupons at the time they
were paid the money for them had no intention of selling them
or knowledge that they were doing so.

3rd. Because the appellant purchased the bonds to which
said coupons had been attached, with no notice either actual
or constructive that said coupons had not been paid in the
usual course of business.

The appellee testified that he acquired the coupons in con-
troversy from a Mr. Manfull who owned them at the time as
far as he (the appellee) knew ; and from whom he had infor-
mation that Manfull had purchased the coupons from R.
C. Flower. When the original holders of these coupons, or
the holders who detached them from the bonds, received pay-
ment for them this payment was made to them at the office,
in Baltimore City, of the Atlantic Trust and Deposit Company
through checks of R. C. Flower & Co. drawn upon R. C.
Flower & Co., bankers of New York, which checks were en-
dorsed and collected. The question raised by the exceptions
of the appellant to the claim now made by the appellee is
whether this transaction, between the holders who received
payment for their coupons in the manner described and R. C.
Flower & Co. is to be held as a purchase of the coupons by
R. C. Flower & Co. or as a payment of them for account of
the Atlantic Trust and Deposit Company to the extinguish-
ment *pro tanto*, as against the bonds here in question, of the
lien under the deed of trust securing them. There is no
question that the appellant acquired in good faith the title of
such holders of the bonds and stands before the Court now
in their place with such rights as they would have if here. On
the other hand it is conceded that the appellee took no better
title, as against these bonds, to the coupons now held by him

than could be asserted by R. C. Flower & Co., who acquired them when they were overdue and in the manner mentioned. The determination of the rights of the parties before the Court depends therefore entirely upon the solution of the question just stated and it is the only question in the case.

There seems to be no real difference between the counsel, who have ably presented the respective contentions in the case as to the legal principles which must control in its consideration, and the question the Court has to deal with is principally, if not exclusively, one of fact. Beyond, therefore, averting to one or two settled principles of law conceded to have application to the question here involved, we need make little reference to adjudicated cases since each case in its facts presents its own peculiar considerations for determining the conclusions reached. As reflecting upon the inquiry we are to make, the following quotation from 2 *Cook on Corporations*, sec. 771, p. 1742, will be appropriate. "When coupons are presented for payment and are cashed, they are held to be cancelled so far as the bonds and other coupons are concerned. Even though a third person was buying them instead of the company paying them, the bondholders may insist on their mortgage lien free from these purchased coupons, unless the party presenting the coupons knew that he was selling them. The reason is that it takes two parties to make a sale, and, moreover, the coupon holders might have preferred to foreclose rather than sell." This embodies a proposition that is sustained by authority and which in the absence of authority addresses itself most strongly to reason and the common understanding. In the case of *Ketchum* v. *Duncan*, 96 U. S. 659, it is said at page 662 of the volume: "It is undoubtedly true that it is essential to a sale that both parties should consent to it. We may admit also that where, as in this case, a sale, compared with payment, is prejudicial to the holder's interest by continuing the burden of the coupons upon the common security and lessening its value in reference to the principal debt, *the intent to sell* should be clearly proved. But the intent to sell or the assent of the former owner to a sale need not have been ex-

pressly given.  It may be  inferred  from  the  circumstances of
the transaction.    It often is.''    In *Wood* v. *Guarantee Co.*, 128
U. S. 416, it is said:  '' The question as between payment and
purchase is one of fact rather than of law to be settled by the
evidence, largely presumptive generally, in the case.    It is a
question of the intention of the parties.''    To the same gen-
eral effect, though they do not bear as close an analogy to the
case at bar as those just referred to, are the cases of *Com. of
Vir.* v. *Ches. & O. Canal Co. et al.*, 32 Md. 501, and *Cameron*
v. *Tome et al.*, 64 Md. 507.    By these accepted tests we are
to judge of and decide upon the facts before us here.

   The holders of the  bonds and the coupons when the latter
were paid in the manner described were Mr. John E. Semmes,
the Traders' National Bank, Mr. B. F. Bennett and the West-
ern National Bank, all, both individuals and corporations, resi-
dent in the city of Baltimore.    In the case of *Ketchum* v. *Dun-
can, supra*, which is the one most relied upon by the appellee,
the Court in dealing with the evidence laid stress upon the fact
that it clearly appeared therefrom that the  parties, who made
payment of the coupons involved  in that case and who, upon
the evidence there, were  held  to be  purchasers, intended to
purchase the coupons and not to pay and  retire them, or to
advance money to have them paid and retired, and then held that
the facts and circumstances attending the transaction in ques-
tion in that case were not such as to defeat that actual inten-
tion.    This element of proof which operated there so strongly
as a basis of the conclusions reached by the Court is  present
in this case but applies in a different aspect.    It is made en-
tirely clear by the evidence here that the parties who held the
coupons in question in presenting them for payment did not
intend to sell them but to have them paid and cancelled.    Each
one of these parties was  examined as a witness and each of
them testified with emphasis that he had  no intention to sell
his coupons.    Mr. Semmes, the largest holder, saying that he
would not have sold if the proposition had been made to him,
and giving the very reason that is mentioned in the quotation
from *Cook on Corp.*, *supra*, that if there was  to be  a default

upon interest upon the bonds secured by the mortgage he desired to be interested in the foreclosure thereof the better to protect his bonds.   Nor is it perceived how the parties representing the Atlantic Trust Co. and Flower & Co., through whom the transactions in question in respect to these coupons were had by the holders, could have been in any way misled as to the intention of the holders, or could have supposed that these holders thought they were doing anything more than getting their coupons paid and retired.   In the first place these parties knew that it was against the interest of these holders to sell their coupons and leave them outstanding to the impairment of the security of their bonds, which is a circumstance strongly bearing on the question of intent.   *Walker* v. *Stone et al.*, 20 Md. 198, citing language from CHIEF JUSTICE SHAW.

But more specific grounds for holding that there could have been no reasonable mistake in reference to the attitude of the holders to the transaction in regard to the payment of the coupons are that in the case of Mr. Semmes he received payment in January, 1900, for coupons due in August, 1899, and then had no conversation in respect to the transaction that he could remember, it being apparently of a matter-of-course character. At the next transaction, in February, 1900, he expressly informed the other parties to it that he " wanted it to be understood distinctly " that he " did not sell these coupons."   He " presented them for payment."   The exact answer made to this he was not able to give, but what he said as to his recollection of it went to show it was of a vague and evasive character, and such as not to give him to understand or suppose, or to suggest to him, that the transaction was to be regarded as a sale of the coupons by either side, in view of his emphatic testimony that he would not have made the transaction on that basis, and the reasons he assigned for not being willing to do so.   In the case of Mr. Bennett he testified that he had previously collected second mortgage coupons at the office of the Atlantic Trust and Deposit Company in cash and took the coupons involved in this controversy that were held by

him to the same place and received the check of R. C. Flower & Co., " per Hill," in payment for them and collected the check, and said upon cross examination that he had not noticed that there was any point in the check being drawn by Flower & Co. instead of the Atlantic Trust and Deposit Co., that he calculated he was receiving " a check for the payment of the coupons " and " didn't feel specially interested whether it was drawn by Flower & Co. or the Atlantic Trust Co." He further testified in chief that he received the check " from the principal party that transacted the business at the Atlantic Building " and according to his recollection " his name was Hill," and on cross-examination that, according to his recollection, Hill had, on the occasion, when he had previously received cash for coupons presented, directed " the cashier to pay for the coupons," and that according to his recollection his conversation was with Hill. The point of his testimony is that he went for payment of the coupons here in question that were owned by him to the same place at which he had had his coupons paid previously ; had the transaction with the same party who directed the payment on the previous occasion and thought he was receiving payment for these just as he had been previously paid—there only being a difference in the mode of payment; and he was allowed to think so without an intimation, or a suggestion, or any circumstance, other than the difference in mode of payment, to put him on his guard in a matter in which he was to be held as having made a contract of sale by having an intention imputed to him contrary to the actual fact.

The other two holders of coupons here in controversy were the two banks that have been named. The persons, Mr. Williams and Mr. Ewalt, who were entrusted with the collection of the coupons held by these banks both testified distinctly that they had no intention of selling the coupons, and had no thought of any transaction in regard to them other than to present them and have them paid. Further than this these witnesses were mere agents of the banks for the purpose of collecting the money for the coupons, and had no authority

to sell; and those who dealt with them must be held to have known this in the absence of authority exhibited which they should have called for, if the transaction, in reference to the coupons, was to be anything more than payment of them in the regular course of business.    In the case of the witness Ewalt who collected the coupons for the Western National Bank he testified that upon presenting the coupons at the office of the Atlantic Trust and Deposit Company he was tendered the check of R. C. Flower & Co. "per Hill" which appears in the record; that he then told the party tendering the check what his instructions were from the bank which were to get the actual cash for the coupons; that the person so tendering the check sent for some one in the office and inquired "if he had sufficient money to cash this check and the answer was no;" that then the party who had tendered the check asked witness to wait a moment and he would get the money for the check; that the money was produced and "the actual cash" was given to witness according to "instructions;" and that when the cash was thus delivered to witness he took the check and endorsed it as it appears in the record "Western Nat. Bank of Balto" "By T. B. Ewalt, A. C." Upon such a state of case to hold the transaction described by this witness as a purchase by R. C. Flower & Company of the coupons which were delivered by him is to sanction it as such in this instance, as well as in the case of Mr. Semmes already alluded to, against not only the actual but the expressed intention of the parties to be affected.

The testimony which has been under consideration shows clearly that the holders of the coupons in question in parting with them, as has been described, did not intend the transaction as a sale; and that the representatives of R. C. Flower & Co. not only had good reason to know, but *must* have known that the holders did not intend a sale of the coupons, and did not know or have reason to suppose that they were intended to be or would be treated as the subject of purchase by Flower & Co.  This would seem to be quite sufficient to protect these holders against any secret purpose of Flower & Co.

or agreement or understanding between Flower & Co. and the Atlantic Trust and Deposit Co. whereby money was to be paid for the benefit of that corporation to prevent default under the mortgage or deed of trust while Flower & Co. would share in the security of the bondholders by treating the money advanced by them as a purchase of a part of that security. If a transaction of the character of those we are considering can only be a sale when both parties are consenting to a sale; or when circumstances are such that it would be inequitable to otherwise regard it, can such as the evidence we have adverted to discloses here, be regarded as a sale of the coupons in question either as a matter of fact or a matter of equity? There are other features of the case however appearing from the evidence which go to emphasize a negative to this inquiry. Flower & Co. had contracts with the Atlantic Trust and Deposit Co. which brought them into close relations with it. They held the company's stock to a large amount. Members of the firm had official positions in the corporation that gave them large influence in its affairs. They were its fiscal agents; had agreed to sell a large amount of its stock. From all of these considerations they were greatly interested in the success of the corporation which would have been most unfavorably affected by a default in payment of the interest upon the mortgage bonds that encumbered its property. There were strong impelling reasons therefore for them to pay the coupons here in question rather than permit a default in their payment.

Now it is urged that the holders of the coupons were put upon inquiry because the coupons were paid with the checks of Flower & Co. instead of in cash or by the checks of the Atlantic Trust and Deposit Co. If they had made this inquiry the considerations just mentioned would have given them good reason for supposing that Flower & Co. intended to make payment of the coupons they presented especially when these were coupled with the fact that they were actually paying, as the evidence shows, the first mortgage coupons. While the circumstances alluded to were calculated to put the

holders off their guard in making their transactions with Flower & Co., they on the other hand imposed a duty on the latter of more frankness in dealing with the holders than the evidence shows they observed ; and they should not be permitted by their mere silence, when there was good reason for them to believe that such silence was deceptive, to entrap the holders who presented their coupons into making a sale to their prejudice and contrary to their actual intent. The weight of considerations such as those here alluded to was recognized in the decision of the case of *Wood* v. *Guarantee Co.*, 128 U. S. *supra.*

It is urged also that the holders of the coupons were put upon inquiry because payment was made to them at a different place from that specified on the face of the coupon. If the representatives of Flower & Co. had good reason to know or believe what the actual intention of the holders of the coupons was when they delivered the coupons and received payment for them, as we think the evidence shows they had, the circumstance just mentioned can have no weight. But apart from this the evidence shows that the office of the Atlantic Trust and Deposit Co. was the place where the coupons were being paid and was so recognized and was the place resorted to by those seeking payment. One of the witnesses testified to having gone with his coupons to the Mercantile Trust and Deposit Co. to present them for payment and was there directed to go to the office of the Atlantic Trust and Deposit Co. Importance is attached by the appelle to the testimony of the witness Albertson who held the position of secretary and treasurer of the Atlantic Trust and Deposit Co. during the time the transactions in question with the holders of the coupons occurred, except the first one with Mr. Semmes when he was in the office of the company but in another capacity. Under the circumstances of this case however but little weight attaches to his testimony. He testtifies in a positive manner that Flower & Co. "bought" the coupons in controversy. This however under the circumstances of the case was but the expression of opinion. Whether Flower & Co. bought the coupons

was not a palpable fact but depended on facts and circumstances and was a matter of deduction from these.    He also testified to what the books of the Atlantic Trust and Deposit Co. show as to the account between the company and Flower & Co.; and to the absence of any memoranda or entries of the coupon transactions.    The affairs of the corporation, as developed in the evidence, were too much under the control of Flower & Co. to make the showing of the books of the Atlantic Trust and Deposit Co. a very potent probative force in reference to a question of this character and under the circumstances of this case.    The absence of these transactions from the books of the company is what these circumstances would lead us to expect.    The radical weakness of this testimony however is that it does not at all affect the real question in the case upon the facts developed.    It is immaterial how the transactions here involved were treated as between Flower & Co. and the Atlantic Trust and Deposit Co.    The real question is what was the intention of the holders of the coupons in controversy in these transactions and whether Flower & Co. must not be held to have known that intention.    A further consideration that weighs against the testimony of this witness is that his knowledge of what he testifies to is, as to the character of the dealing in respect to the coupons, almost entirely derived from or based upon information received from Mr. Small a member of the firm of R. C. Flower & Co. and Mr. Hill the representative of that firm at the office of the Atlantic Trust and Deposit Co. and a vice-president of that corporation—both of whom could have spoken with better knowledge of the matters to which he testified, and yet neither of them was examined as a witness nor was it explained why.    In this connection it may also be added that it does not appear that any effort was made to secure the testimony of R. C. Flower who may be supposed to be able to testify with knowledge of the facts deemed important to the appellee.    No reference has been made to the exceptions to testimony filed by the respective parties because to do so could have no significance beyond the requirements of the present case ; and here the decision is not dependent

upon the testimony excepted to and it has not influenced the conclusions reached.

From the foregoing views it will appear that we find there was error in the order of the Court below ratifying account B as stated by the auditor and the order will be reversed with costs.

*Order reversed with costs and case remanded.*

(Decided April 2nd, 1902.)